## THE STATE OF TEXAS v. J. C. DE GRESS.

### *(Case No. 4047.)*

1. QUO WARRANTO — JURISDICTION.— A suit by information in the nature of *quo warranto*, prosecuted in the name of the state of Texas against one charged with unlawfully holding the office of mayor of the city of Austin, is a civil proceeding of which the district court has, under the constitution, original jurisdiction, the office being of the value of five hundred dollars.

2. SAME.— Such a suit, though in form analogous to a criminal prosecution, is in the nature of a civil remedy; the statute authorizing the suit being a copy of the statute of 9th Anne, which authorized a fine, must receive the construction given to that statute, under which a nominal fine only was imposed.

3. CONSTITUTIONAL LAW — CONSTRUCTION.— A narrow and literal construction of the constitution, in regard to the jurisdiction of the district court, will not be adopted, when its result would be to leave no tribunal competent to take jurisdiction of important cases arising under legislative enactments.

4. CASES DISTINGUISHED.— This case distinguished from Tunstall *v.* The State, 51 Tex., 82, and Trigg *v.* The State, 49 Tex., 643.

5. JURISDICTION — FORFEITURE OF OFFICE.— The city council of Austin, in acting under authority of its charter to judge of the election, returns and qualifications of its own members, and determine contested elections of city officers, trespassed on the jurisdiction of no constitutional court. But if the council may " refuse the seat " to one claiming to have been elected mayor, because of disqualification, or " may remove him because of continuing disqualification," their action in declaring him elected and installing him into office cannot oust the district court of its constitutional jurisdiction to inquire into the forfeiture of the office.

6. LUCRATIVE OFFICE.— Officers of the United States on the retired list constitute a part of the army of the United States; they retain the actual rank held by them at the date of their retirement; receive seventy-five per cent. of the pay of that rank; are subject to trials by courts martial, and may be assigned to duty at the soldier's home. Such an officer holds a " lucrative office " under the United States, and an office of " trust or profit " in contemplation of the constitution of the state.

7. OFFICER.— The office of mayor of the city of Austin cannot legally be held by one who at the same time continues an officer of the army of the United States on the retired list.

APPEAL from Travis. Tried below before the Hon. E. B. Turner.

The case is stated in the opinion.

Separate briefs were filed on the motion to dismiss, accompanied with ably written arguments by several of the counsel. The questions raised on the motion to dismiss being discussed in the final opinion, the propositions of counsel on the motion and on the final hearing have been consolidated for convenience, instead of being published, as written, in separate briefs.

*George McCormick, Attorney General,* for the state.

I. The writ of *quo warranto*, which was a purely civil remedy, has been obsolete for more than a century (Ang. & Ames on Corp., p. 814, § 731; 2 Kyd on Corp., 395, 403–4), and the information in the nature of a *quo warranto* has taken its place as being more convenient, more speedy, less expensive and more effectual. Ang. & Ames on Corp., § 734, and cases cited; People *v.* Trustees, etc., 5 Wend., 211–220; Ang. & Ames on Corp., § 733, and cases cited; Ang. & Ames, § 737.

II. That the ancient writ of *quo warranto* and the modern information in the nature of a *quo warranto*, that is now a substitute for the ancient writ against intruders and usurpers, as the appellee is admitted by the demurrer to be, to forfeit the offices that they illegally hold and to oust them from them, are common law proceedings, resting for their authority on no statute and both governed by the same rules. Banton *v.* Wilson, 4 Tex., 402; Wright *v.* Allen, 2 Tex., 158; State *v.* S. Pac. R. R. Co., 24 Tex., pp. 88–95 of the brief of Judge A. H. Willie, where the authorities are carefully grouped. See same case, 24 Tex. 113, and pp. 116 and 117, where the correctness of Judge Willie's position is asserted by the court. Bradley *v.* McCrabb, Dallam, 507; State *v.* Rio Grande R. R. Co., 41 Tex., 217.

III. Informations of this character in the nature of a *quo warranto*, whether a fine is imposed or not, are regarded and treated as civil suits. Ang. & Ames on Corp., §§ 733, 734; State *v.* Merry, 3 Mo., 278; State *v.* St. L., P. M. F. & L. Ins.

Co., 8 Mo., 330; Com. Bank, etc., *v.* State, 6 Smedes & Marsh. (Miss.), 599; Respublica *v.* Wray, 3 Dallas, 490.

IV. The statute of July 9, 1879, declares the proceeding to be civil in its character, and the fact that the court has the power to fine does not alter the main character of the proceedings.

*C. S. West* also for the state.

I. If this proceeding is a civil suit, and the district court of Travis county has original jurisdiction of it, then it follows as a matter of course that the supreme court has appellate jurisdiction of the cause. Const. 1876, art. V, secs. 3, 8; Leg. act of July 9, 1879.

II. Is this proceeding, then, a civil suit? Of this there can be no doubt; the act says so. This is nothing more or less than the well known and long recognized proceeding by information in the nature of a *quo warranto* for the purpose of ousting an intruder and usurper from office. This proceeding has always been regarded solely as a civil proceeding. 1 Ired., 42; High on Ex. Rem., §§ 603, 710, and cases cited; 3 Black. Com., 263; 1 Blackf., 267.

III. The pleadings are subject to amendment according to the practice and rule in civil suits, and in all other respects they are conducted as are civil suits. High on Ex. Rem., § 737; Commonwealth *v.* Commercial Bank, 28 Pa. St., 383.

IV. There is no *capias*, or arrest, or recognizance, or conviction. There is no sentence; there is no punishment inflicted; and there is no element of a criminal suit about it, except the use of the word "information;" it could, though, have been called just as appropriately a petition. It is simply called information, not because it is a criminal cause, but because it is filed by the state upon the information of others.

V. It is true that the act of July 9, 1879, authorizing this proceeding, does give the court authority to fine the usurper or offending corporation, but this is merely an incident of the proceedings and is not its sole or main object; and the fact

that the court is clothed with that power does not necessarily make the proceeding a criminal one. That portion of the act allowing the court to fine is not believed to be operative or constitutional. Is it in the power of the legislature to clothe the court without the interposition of a jury, with power to fine the usurper in any sum it may see fit, from $1 to $100,000? We believe not. We do not think the insertion of that provision changes the character of the information. There is in fact no fine imposed in this case, and that feature of the case is, in any event, merely incidental to the general purpose.

VI. It is not, however, an information at all criminal in its character or scope, but a different information, used for civil purposes alone, to wit: an information in the nature of a *quo warranto*, and takes the place and is the substitute for the old writ of *quo warranto*. High, §§ 598–602.

VII. If, then, it is a civil proceeding, the district court has original jurisdiction because it is a suit, a case, a plea in court. It has a plaintiff and defendant; it has a subject matter: the right of the defendant to the office, and has a value of over $1,000. Is it not a civil suit by the state to determine the appellee's right to the office? Banton *v.* Wilson, 4 Tex., 402, and cases cited in *Ex Parte* Towles and in Williams *v.* Lane, referred to by appellee.

VIII. The case of State *v.* Tunstall, 51 Tex., 81, contains nothing contrary to the propositions we lay down. That case was tried under an act of the legislature passed before the adoption of the present constitution.

IX. The cases of Glaevecke *v.* The State and Gordon *v.* The State, all carefully reviewed in the case of Trigg *v.* The State, 49 Tex., 643, a case under the present constitution and laws, are much more to the point and are in favor of the jurisdiction.

X. The proceeding is civil in its character, and is such a proceeding as the district court, in the exercise of its original jurisdiction as granted to it in the constitution, can and ought to entertain, and, as a consequence, its judgment in such a

case can be examined by this court in the rightful exercise of that appellate jurisdiction conferred upon it by the constitution.

*A. J. Peeler* also for the state (on the merits).

I. The action of the city council of the city of Austin, in counting the votes cast for the office of mayor, and in announcing that the appellee was elected such mayor, is not a bar to an inquiry by the district court into the eligibility, qualifications and right of appellee to hold said office or of his forfeiture of the same.    Act of July 9, 1879; appendix to R. S., p. 47; Charter of the City of Austin (Special Laws 13th Leg., p. 215, art. IV); 1 Dill. on Mun. Corp., sec. 141; 2 Potter on Corp., sec. 672; State *v.* Fitzgerald, 44 Mo., 425; Comm. *v.* Allen, 70 Pa. St., 465; People *v.* Hall, 9 Reporter, 479, decision by Court of Appeals of New York.    See opinion of Valentine, J., concurred in by Kingman, Ch. J., constituting majority of court, in Anthony *v.* Halderman, 7 Kan., 65; Luckett *v.* Lindsey, 20 Tex., 516.

II. The appellee is prohibited by law from being mayor of the city of Austin.    Const., art. VI, secs. 1–3; art. XVI, sec. 12, Charter of the City of Austin (Special Laws 13th Leg., p. 215, arts. 4–8); Code Crim. Proc., arts. 42–894; Code City of Austin, art. 353; Const. U. S., art. II, secs. 2–4; R. S. U. S., secs. 1254, 1255, 1256, 1259, 1260, 1756; Act of 43d Cong., p. 512; Mimmack *v.* U. S., 97 U. S., 437; 4 Opinion Att'y Gen'l U. S., 603; 12 Opinion Att'y Gen'l U. S., 382, 519–522; Kerr *v.* Jones, 19 Ind., 351; People *v.* Whitman, 10 Cal., 38; Sanford *v.* Boyd, 2 Cr. C. C., 78; United States *v.* Hartwell, 6 Wall., 385; Platt v. Beach, 2 Ben., 303–316; McCrary on Elec., sec. 240; Rodman *v.* Harcourt, 4 B. Mon., 224.

*Gardner Ruggles* also for appellant.

I. The action of the city council of the city of Austin in counting the votes cast at an election for mayor, and in declaring a candidate elected to said office, is not such a judgment of

a court of competent jurisdiction as may be set up in bar of a proceeding in the district court of the state, instituted to inquire into the eligibility of such candidate for such office after he has been installed therein, or to declare forfeiture of the office on the part of such person. R. S. Texas, appendix, p. 47; Charter City of Austin (Spec. Laws 13th Leg., p. 215, art. IV); 1 Dill. on Mun. Corp., § 141; Comm. *v.* Allen, 70 Pa. St., 465; 44 Mo., 428; 4 Cow., 95, 297, 323; 3 Hill (N. Y.), 51; High's Ex. Leg. Rem., § 627; id., 685; 1 Ired., 46.

II. Appellee was, at the time of his election to and installation in the office of mayor of the city of Austin, ineligible thereto. Charter City of Austin (Spec. Laws 13th Leg., p. 218, art. V); R. S. U. S., secs. 1094, 1251, 1252, 1254, 1256, 1259, 1260, 1274; 4 Opinion Att'y Gen'l U. S., pp. 603–13; 12 Opinion Att'y Gen'l U. S., pp. 382–386.

III. Appellee on being installed in the office of mayor of the city of Austin, immediately forfeited said office and his right and title to same. Comm. *v.* Allen, 70 Pa. St., 465; High's Ex. Leg. Rem., § 685, and note 1.

*Ward & Pendexter* for appellee.

I. This proceeding is in its nature criminal, and therefore this court has no jurisdiction. Sec. 3, art. V, Const. 1876; High's Ex. Legal Rem., sec. 603; 1 Ark., 304; 11 Ill., 553; 13 Ill., 66; Bouvier's Law Dictionary, words " Civil Action " and " Recovery;" 3 Murph. (N. C.), 169; State *v.* Tunstall, 51 Tex., 82; 15 Johns. (N. Y.), 386; 4 Term, 381.

II. The district court has no original or appellate jurisdiction under the constitution; therefore this court has no jurisdiction. Art. V, sec. 8, Const. 1876; Lane *v.* Williamson, Tyler Law Journal, Jan. 28, 1880; *Ex Parte* Towles, 48 Tex., 413.

III. The legislature cannot confer additional jurisdiction on the district court to that conferred upon it by the constitution; therefore this court has no jurisdiction. Sec. 1, art. V; secs. 3,

8 and 22, art. V. Const. 1876; Titus *v.* Latimer, 5 Tex., 436; id., 572; State *v.* Ashley *et al.*, 1 Ark., 279; 6 Tex., 147; 48 Tex., 413.

IV. The city council, under the charter, is made a special tribunal for the trial of questions affecting the matter of the election returns and qualifications of its own members, and as the information shows that the city council had adjudicated and determined the eligibility of defendant, the court did not err in sustaining defendant's demurrer to the information.  Charter City of Austin, art. IV; Field *v.* Anderson, 1 Tex., 437; Baker *v.* Chisholm, 3 Tex., 157; O'Docherty *v.* Archer, 9 Tex., 295; *Ex Parte* Towles, 48 Tex., 415; People *v.* Metzker, 47 Cal., 525; Commonwealth *v.* Garrigues, 28 Pa. St., 11; Commonwealth *v.* Baxter, 35 Pa. St., 264; Commonwealth *v.* Leech, 44 Pa. St., 332; id., 342; State *v.* Marlow, 15 Ohio St., 114; id., 326; Grier *v.* Shackleford, 3 Brevard (S. C. L.), 491 (affirmed in State *v.* Deliesseline, 1 McCord (S. C.), 63–7); State *v.* Huggins, Harper (S. C.), 139; State *v.* Cockrell, 2 Rich. (S. C.) L., 6; Commonwealth *v.* McCloskey, 2 Rawle (Pa.), 380, 384; 16 Iowa, 377; 1 Met. (Ky.), 538; 17 Iowa, 387; Anthony *v.* Halderman, 7 Kan., 63; 49 Tex., 245.

V. An officer of the army of the United States on the retired list does not hold such an office as disqualifies him under the charter of the city of Austin, and the constitution and laws of the state, to hold a civil office under said laws.

*Walton, Green & Hill, Sheeks & Sneed* also for appellee.

I. The jurisdiction of this court is limited to civil cases of which the district court has original or appellate jurisdiction. Const. of 1876, sec. 3, art. V; The State *v.* Tunstall, 51 Tex., 82; Williamson *v.* Lane, Tyler term, 1879.

II. This is a criminal case, or at least a *quasi* criminal case, in which the state has no right to appeal, and of which this court has no jurisdiction on appeal.  Const. 1876, sec. 26, art. V; id., sec. 12, art. V; Act of July 9, 1879, pp. 47, 48, appendix to R. S.; The State *v.* Tunstall, *supra; Ex Parte*

Towles, 48 Tex., 414; Bouvier's Law Dictionary, the words "Civil" and "Civil Action;" The People *v.* Utica Ins. Co., 15 Johns., 386; The State *v.* Ashley, 1 Ark., 279; Donnelly *v.* The People, 11 Ill., 552; The People *v.* The Mississippi & Atlantic R. R. Co., 13 Ill., 66; High's Ex. Leg. Rem., § 603.

III. If this be a civil case, jurisdiction of the same is not conferred on the district court by the constitution, but is conferred by statute alone; hence this court has no jurisdiction. Const., secs. 3 and 8, art. V; id., sec. 22, art. V; The State *v.* Tunstall, 51 Tex., 82; Williamson *v.* Lane, Tyler term, 1879; *Ex Parte* Towles, 48 Tex., 414, and cases cited on p. 436 of that case; Bouvier's Law Dictionary, word "Controversy."

IV. The legislature has no power under the constitution to enlarge or diminish the jurisdiction of the district court except in the mode prescribed by sec. 22, art. V, which has not been done by the act of July 9, 1879, under which this proceeding has been conducted. The act of July 9, 1879, so far as the same relates to this case, is void, and confers no jurisdiction on the district court, and this court acquires no jurisdiction by this appeal. Williamson *v.* Lane, *supra;* Thomerson *v.* The State, 8 Tex., 172; Horan *v.* Wahrenberger, 9 Tex., 313; Titus *v.* Latimer, 5 Tex., 436; Aulanier *v.* The Governor, 1 Tex., 667; Clepper *v.* The State, 4 Tex., 242; Cowan *v.* Nixon, 28 Tex., 230; Baker *v.* Chisholm, 3 Tex., 157; Able *v.* Bloomfield, 6 Tex., 263.

GOULD, ASSOCIATE JUSTICE.— The nature of this case will sufficiently appear from the following statement, extracted from the brief of counsel for appellant:

"This was an information in the nature of a *quo warranto*, instituted in the district court of Travis county, Texas, on the 14th day of February, 1880, by E. T. Moore, county attorney of Travis county, Texas, under the act of July 9, 1879 (R. S. Tex., appendix, p. 44), acting of his own accord, and also on the sworn relation of Radcliff Platt, a citizen, voter, property holder and tax payer of the city of Austin, in said county and

state, against J. C. De Gress, who was elected mayor of said city on the 3d day of November, 1879, and installed as such by the city council of said city on the 13th of the same month. The information was filed on behalf of the state of Texas, and after reciting that provision of the charter of the city of Austin which prescribes that ' no person shall be mayor (of the city of Austin) who at the time of his *election* is not possessed of the qualifications required for an alderman, or who holds any lucrative office under authority of the United States or any state,' alleges that said J. C. De Gress was not and is not eligible or qualified to take and exercise said office of mayor, by reason of the fact that he was, at the time of his election, and still is, an officer of the army of the United States, holding a lucrative office under authority of the United States, to wit: the office of captain of cavalry, on the retired list, of the army of the United States, subject to duty, and drawing pay as such officer. And it is further alleged, in the pleadings of appellant, filed below, that, by virtue of appellee's holding said lucrative office under authority of the United States, he was not a citizen or legal voter of the state of Texas, and was therefore not qualified to act as mayor of said city of Austin. To the information filed in this cause the defendant interposed his demurrer, contending that by reason of the fact of his having been counted in and installed as mayor of said city of Austin by the city council of said city, said council being by the provisions of their city charter made, as he alleges, the sole judges of the election returns and qualifications of its own members, and the mayor being a member of said council, the whole matter was *res judicata*, and finally and forever settled by the judgment of a court of competent jurisdiction.

"He further contended that this controversy was one beyond the jurisdiction of the district court conferred by the constitution of Texas.

"The district court sustained the demurrer and dismissed the cause, ordering costs to be taxed against the relator.

"From this judgment the state now appeals."

A motion to dismiss was made by appellee on the ground that this was a criminal case of which this court had no jurisdiction, and on the further ground that if not a criminal case, it was one of which the district court had no jurisdiction.

As heretofore orally announced in overruling the motion to dismiss, our opinion is that this is a civil case of which the district court has original jurisdiction under the constitution, and is therefore a case within the appellate jurisdiction of this court.

The proceeding authorized by our statute is substantially the same as that in the statute of 9th Anne, and although in form a criminal method of prosecution, has long been held by the standard text writers and the courts to be "in its nature a civil remedy," "applied to the mere purposes of trying the civil right, seizing the franchise, or ousting the wrongful possessor; the fine being nominal only." 2 Kent, p. 313; 3 Blackst., p. 263; High on Ex. Rem., secs. 603–710, and cases cited; Angell & Ames on Corp., sec. 733; State *v.* Hardie, 1 Ired., 42; State Bank *v.* State, 1 Blackf., 272; State *v.* Kupferle, 44 Mo., 155; Com. Bank *v.* State, 4 Smedes & Marshall, 504; Commonwealth *v.* Commis. of County of Phila., 1 S. & R., 385; People *v.* Utica Ins. Co., 15 Johns., 386; Tomlin's Law Dict., title "Quo Warranto;" Cole on Crim. Informations, (Law Lib., vol. 49), pp. 125–7; Banton *v.* Wilson, 4 Tex., 407. Says Gaston, J., in State *v.* Hardie, *supra:* "Originally this was a criminal proceeding. In it the usurpation was charged as an offense, and the offender, upon conviction, was liable to be punished by fine and imprisonment. Such, however, were the conveniences attending the information as a mode of trying the mere question of right to the office or franchise, that though it never entirely lost its form as a criminal proceeding, it was so modeled as to become substantially a civil action. A fine, indeed, was imposed upon conviction; but it was nominal only — no real punishment was inflicted, — and it became before our revolution the general civil remedy for asserting and trying the right, in order to seize the

office or franchise, or to oust the wrongful possessor."
1 Ired., 48.

Again he says: " The proceeding before us is carried on
*diverso intuitu*, and to hold it prohibited by the bill of rights
would be to sacrifice substance to mere form.   If, indeed, it
should ever be attempted, in proceedings of this character, to
impose a real fine, or to inflict any other punishment, so as to
make them in effect criminal prosecutions, such attempts
would fall before the explicit prohibitions of the bill of rights
now so needlessly invoked."   1 Ired., 49.

The provision of our statute that the court " may fine such
person or corporation for usurping, intruding into, or un-
lawfully holding and executing such office or franchise," is
literally copied from the statute of Anne, and was doubtless
designed to receive the practical construction given it under
that statute, and to be inoperative save as to a nominal fine.

If, however, it should be construed as a criminal statute au-
thorizing the court to impose an indefinite fine, it would in
our opinion fail to conform to the requirements of our crim-
inal law in affixing the penalty; and to the extent of the fine
would be inoperative.   R. S., Penal Code, art. 3.

The statute, however, itself directs the clerk to "issue cita-
tion in like form as in civil suits; " that the person or cor-
poration "shall be entitled to all the rights in trial and
investigation of the matters alleged against him, as in the
case of trials of civil causes in this state," and expressly en-
titles either party to an appeal to this court.

As the constitution denies the state the right of appeal in
criminal cases, it is plain that the legislature intended it to
be classed as, and practically to be, a civil case.

Our opinion is, that the statute in effect but provides for a
civil suit in the name of the state to oust one who holds an
office in violation of law, or a corporation exercising franchises
which it has forfeited.

Regarded as a civil suit in behalf of the state, the " matter
in controversy " being the right to an office of the value of

$500, the district court under the constitution had jurisdiction to try it; and that part of the act which directs the proceeding to be in the district court is not in conflict with the constitution.   Const., art. V, sec. 8.

Actions to try the right to an office, as distinguished from contested election cases, have before the present constitution pertained to the jurisdiction of the district court.   Banton *v*. Wilson, 4 Tex., 400; Bradley *v*. McCrabb, Dallam, 506.

Though the action be in the name of the state, the "matter in controversy" is still the right to the office, and if that amounts in value to $500, the case comes within the constitutional jurisdiction given the district court.

Were it necessary to do so, in order to uphold the jurisdiction in such a case of the district court, the court which in this state has always been the main tribunal for the trial of cases both civil and criminal, this might, perhaps, be held to be a suit in behalf of the state to recover a forfeiture.

The clauses of the constitution defining the jurisdiction of the district court should be liberally construed, with due regard to the fact that on this court, as the "great reservoir" of jurisdiction, has heretofore devolved the body of litigation in this state.   Especially may a narrow and literal construction be rejected, when the result is to leave no tribunal competent to take jurisdiction of important cases arising under legislative enactments.

Tunstall *v*. State was decided under a statute enacted previous to the present constitution, and is otherwise unlike the present case.   Trigg *v*. State, on the contrary, was a case under our present constitution, and, in so far as it is analogous to the present case, supports the jurisdiction of the district court and of this court.

The motion to dismiss has, in accordance with the views now expressed, been overruled.

The district court sustained exceptions to the information, and in support of its action counsel for appellee submit the following proposition: " The city council, under the charter, is

made a special tribunal for the trial of questions affecting the matter of the election returns and qualifications of its own members, and as the information shows that the city council had adjudicated and determined the eligibility of defendant, the court did not err in sustaining defendant's demurrer to the information."

The charter of the city contains the following: "The city council shall judge of the election returns and qualifications of its own members, and shall determine contested elections of all city officers, made elective under this act or any ordinance of the city." "It was stated in the amended original information that the votes cast in the election for mayor of the city of Austin, of November 3, 1879, were counted; and appellee officially declared elected mayor by the city council of the city of Austin, November 12, 1879; and further, that appellee was installed into said office by said city council."

In passing upon the election returns, and in determining a contested election for mayor, the city council trespasses on the jurisdiction of no constitutional court. The legislature may authorize special tribunals, such as the city council, to decide such questions and try such cases, because they are not cases of which the constitution gives jurisdiction to any of the courts created by that instrument. Williamson *v.* Lane, Tyler term, 1879, and cases there cited. To what extent the charter intends to make the city council a tribunal to finally adjudicate the question of the qualification or disqualification of its members, including the mayor, it is not necessary to inquire. The questions of disqualification and forfeiture are so far from being identical, that it by no means appears that the intention of the legislature in the charter, and in the act under which this proceeding was instituted, may not be fully carried out without giving rise to any conflict of jurisdiction. See Commonwealth *v.* Allen, 70 Pa. St., 472. However this may be, it is very clear that if the council may "refuse the seat" because of disqualification, or even after the mayor has been admitted into office, "may remove him by reason of continuing

disqualification," their action in declaring him elected and installing him into office cannot oust the district court of its constitutional jurisdiction to inquire into the forfeiture of the office.

It having been determined, in passing on the motion to dismiss, that the proceeding authorized by the statute is a civil suit or complaint, of which, the amount in controversy being sufficient, the constitution gives the district court jurisdiction, it follows that the charter could not confer the same jurisdiction on the city council.

The question is controlled by the provisions of our constitution prescribing the jurisdiction of the different courts, and it is not deemed necessary to enter into an examination of the decisions of courts of other states.

In our opinion the information showed nothing in the nature of a judgment of a court of competent jurisdiction barring the procedure in the district court.

The only other proposition submitted by appellee in support of the action of the court in sustaining the demurrer is, "that an officer of the army of the United States on the retired list does not hold such an office as disqualifies him under the charter of the city of Austin, and the constitution and laws of the state, to hold a civil office under said laws."

By express enactment, officers of the army on the retired list constitute a part of the army of the United States; retain the actual rank held by them at the date of retirement; receive seventy-five per centum of the pay of that rank; are subject to trial by courts martial for any breach of the rules and articles of war, and may be assigned to duty at the soldiers' home.   Rev. Stat. of U. S., secs. 1094, 1254, 1256, 1259, 1274. See Wood *v.* U. S. Court of Claims, 1880, in The Reporter of May 12, 1880, and 12 Opinions of Attorney General, p. 382.

That such an officer holds a lucrative office under authority of the United States, or, in the language of our state constitution, " an office of profit or trust under the United States," is too plain to admit of being made more so.

The office of mayor of the city of Austin cannot legally be held by one who at the same time continues an officer of the army of the United States, though on the retired list.

We deem it unnecessary to pass upon other questions presented.

Because the court erred in sustaining the demurrer to the information, the judgment is reversed and the cause remanded.

.   REVERSED AND REMANDED.

[Opinion delivered May 28, 1880.]