The People of the State of New York, Appellant, v. James C. Duane, Respondent.

It is within the power of the legislative department of the federal government to enact that military offices shall become absolutely vacant when the incumbent shall reach a certain age, and this is the effect of the federal statute (Chap. 254, Laws U. S. 1882; U. S. R. S. § 1254 *et seq.*) providing for the retirement of army officers at the age of sixty-four.

In 1886, defendant was appointed "chief of engineers, United States Army, with the rank of brigadier-general." Defendant entered upon and continued in the discharge of his duties until June 30, 1888, when he reached the age of sixty-four and was retired from active service, under and in pursuance of said act of congress, and his successor was appointed. Defendant left the city of Washington and went to the city

of New York, where he has since resided, and he has since done no act in the service of the United States except to draw and receive from its treasury the amount allowed him as a retired officer; his name is still retained upon the official register of the army, wherein he is designated as an officer on the retired list. In 1888, defendant was appointed by the mayor of the city of New York to the office of commissioner of the new aqueduct, under the act of 1888. (Chap. 584, Laws of 1888.) In a proceeding to test his title to that office, *held,* that defendant did not, at the time of such appointment, hold a federal office within the meaning of the limitation in said act declaring that a commissioner "shall hold no other federal, state or municipal office, except the office of notary public or commissioner of deeds;" that the office held by him was that of chief of engineers, which became vacant upon his retirement; that the title of "brigadier-general" designated not the office, but the military rank, and the fact that he retained the right to the rank, uniform and pay of a brigadier-general after his retirement, and was liable to a trial by court-martial and may be assigned to duty at the Soldiers' Home, or the fact that defendant as a retired officer is entitled to longevity pay, were not proper tests in determining the question.

*It seems,* that if such an assignment should be made and approved by the secretary of war, this would confer upon the appointee the character of a federal officer.

*State* v. *De Gress* (53 Tex. 387), questioned.

*U. S.* v. *Tyler* (105 U. S. 244), distinguished.

(Argued April 24, 1890; decided June 3, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department entered upon an order made January 10, 1890, upon a case submitted under section 1279 of the Code of Civil Procedure.

The nature of the question presented and the material facts are stated in the opinion.

*Esek Cowen* for appellant. An officer of the United States army, retired from active service, is nevertheless the holder of a federal office. ( *U. S.* v. *Tyler,* 105 U. S. 245 ; *In re Attorney's Oaths,* 20 Johns. 493 ; *People* v. *Nichols,* 52 N. Y. 478, 484, 485 ; *Smith* v. *Mayor,* 37 id. 520 ; *U. S.* v. *Hartwell,* 6 Wall. 385 ; *Shelby* v. *Alcorn,* 36 Miss. 273 ; *Tyler* v. *U. S.,* 16 Ct. Claims, 374 ; *U. S.* v. *Tinklepaugh,* 3 Blatchf.

430; *In re Tyler*, 18 Ct. Claims, 25.) The inhibition contained in chapter 584 of the Laws of 1888, which forbids commissioners, appointed by the mayor, to hold any other federal, state or municipal office, except the office of notary public and commissioner of deeds, is clear, distinct and unambiguous. It cannot, therefore, be modified or limited by construction by the court. (Laws of 1882, chap. 410; *People ex rel.* v. *C. S. Bd.*, 17 Abb. [N. C.] 64; 103 N. Y. 657.) The reasoning of the majority of the General Term, founded, as it is, upon the assumption that the sole object of the legislature was to forbid the appointment of an individual, whose duties, as a federal, state, or municipal officer, would interfere with his duties as aqueduct commissioner, takes too narrow a view of the statute, and cannot be justified upon either principle or authority. (*Olmstead* v. *Mayor*, 10 J. & S. 487; *State* v. *Wilson*, 20 Ohio St. 348.)

*James C. Carter* and *E. Winslow Paige* for respondent. An office in legal idea is an entity, which exists apart from its incumbent, who, of course, may be a rightful incumbent or not of right. Its first and cardinal requisite is something to be done. If there is nothing to be done, there is no office. (*Field* v. *Boethsby*, 2 Sid. 137; *King* v. *Burnell*, Carth. 478; 2 Black. Comm. chap. 3, 36; 20 Johns. 493; 2 Burrill's Law Dict. 766; *S. Co.* v. *Parker*, 3 Wall. 93; *Vaciari* v. *Maxwell*, 3 Blatchf. 368; *People ex rel.* v. *Nichols*, 52 N. Y. 478, 484; *In re Hathaway*, 71 id. 238; *U. S.* v. *Hartwell*, 6 Wall. 385; *U. S.* v. *Germaine*, 99 U. S. 508; *U. S.* v. *Maurice*, 2 Brock. 96; *Hall* v. *Wisconsin*, 103 U. S. 5; 3 Greenl. on Ev. 481; Mecham on Pub. Offices & Officers, §§ 1–9, 322; *Boardman* v. *Halliday*, 10 Paige, 223, 232; *Conover* v. *Devlin*, 15 How. Pr. 470, 479; *Cohn* v. *Beal*, 61 Miss. 398; *Morgan* v. *Quackenbush*, 22 Barb. 72; U. S. R. S. §§ 1094, 1256, 1259, 1260.) General Duane's position as an officer on the retired list neither compels nor permits him to do any act in the service of the federal government. (*Tyler* v. *U. S.*, 105 U. S. 244; U. S. R. S. 1255, 1257, 1259, 1260; *Collins' Case*,

15 Ct. Claims, 22, 40.) General Duane, therefore, does not "hold" any federal "office." (*People ex rel.* v. *Nichols*, 52 N. Y. 478; *U. S.* v. *Germaine*, 99 U. S. 508; *Collins' Case*, 15 Ct. Claims, 22; *Edwards* v. *U. S.*, 103 U. S. 471, 474, 475; *Van Orsdall* v. *Hazard*, 3 Hill, 243; Maxwell on Inter. of Stat. 75, 95; *Barker* v. *People*, 3 Cow. 646, 703; *Boardman* v. *Halliday*, 10 Paige, 223; *Gilman* v. *Sheboygan*, 1 Black. 510; Mecham on Pub. Offices and Officers, § 322; *Sullivan* v. *Mayor, etc.*, 53 N. Y. 652; *Costello* v. *Mayor, etc.*, 63 id. 48, 50; *People ex rel.* v. *Bd. of Police*, 75 id. 39, 42; *Olmsted* v. *Mayor, etc.*, 10 J. & S. 481; 3 Greenl. 481.)

O'BRIEN, J. The question involved in this case is the right of the defendant to hold the office of commissioner of the new aqueduct, to which office he was appointed by the mayor of the city of New York in the month of August, 1888. Immediately after the appointment the defendant entered upon the duties of the office and still continues to discharge them and to receive the salary therefor prescribed by law. Chapter 584 of the Laws of 1888, under which the appointment was made confers power upon the mayor to appoint four commissioners with the limitation that "they and their successors shall hold no other federal, state or municipal office, except the office of notary public or commissioner of deeds." This action proceeds upon the ground that the defendant, when appointed held and still holds an office under the federal government and hence the mayor was not only without power, but specially prohibited from making the appointment and the defendant incapable of holding the office. The facts upon which the case for the plaintiff rests, are briefly these: In the year 1886, the defendant was appointed by the action of the president and senate of the United States, to the office of chief of engineers in the army of the United States with the rank of brigadier-general, and it is conceded that there is but one such office. The case agreed upon by the parties, and under which this controversy was submitted to the courts below, states that this office is one of distinct, peculiar and manifold duties that are

discharged by the incumbent in the city of Washington. The defendant entered upon the discharge of his duties and continued to discharge them until the 30th day of June, 1888. During that month he reached the age of sixty-four years. On the 30th of June, 1888, he was retired from active service by operation of law and under the provisions of the act of congress approved June 30, 1882, and pursuant to that act a special order was issued by the secretary of war announcing his retirement. He then left the city of Washington, repaired to the city of New York and has since done no active service in the army of the United States except to draw and receive from the treasury of the United States each month a sum equal to three-fourths of the pay which he drew and received each month while he was performing the duties of the office of chief of engineers. On the 6th of July, 1888, the president and senate of the United States appointed one Thomas Lincoln Casey to the office of chief of engineers, United States army, with the rank of brigadier-general, who entered upon the discharge of the duties of that office and still continues to discharge them. The defendant's name is still retained upon the official register of the army, and he is there designated as an officer upon the retired list. Whether the defendant, when appointed to the office of aqeduct commissioner, held a federal office depends upon the meaning and effect to be given to the acts of congress under which he was retired from active service. Such parts of these statutes as are believed to be material to the question here may be briefly stated as follows: When an officer is sixty-four years of age, he shall be retired from active service and placed on the retired list (Laws U. S. 1882, chap. 254) with the actual rank held by him at the date of retirement. (Rev. Stat. U. S. § 1354.) Officers retired from active service shall be withdrawn from command and from the line of promotion. (§ 1255.) They are entitled to wear the uniform of the rank on which they were retired. They shall continue to be borne on the army register, and subject to the rules and articles of war and to trial by general court martial for any breach thereof. (§ 1256.) They are entitled to receive

seventy-five per centum of the pay of the rank upon which they are retired (§ 1274), and they constitute a part of the army of the United States. (§ 1094.)

When an officer is retired, the next in rank shall be promoted to his place according to the established rules of the service; and the same rule of promotion shall be applied successively to the vacancies consequent upon such retirement. (§ 1257.) The retired list shall not exceed 400 and the president in his discretion may fix the number at less. (§ 1258.) A retired officer upon the selection of the commissioner of that institution approved by the secretary of war, may be assigned to duty at the Soldiers' Home, but cannot be assigned to any other duty provided he received only the pay allowed to retired officers. (§ 1259.) And finally he may on his own application be detailed to serve as a professor in any college, but shall not be allowed any additional compensation. (§ 1260.) These provisions of the act of congress, it is believed, correctly describe the status of an officer of the United States army on the retired list. That the defendant held a federal office, up to the time he was retired from the service, within the meaning of the disqualifying words of the statute, is assumed by both parties to the controversy and cannot be doubted; and unless his retirement from active service, under the act of congress, had the effect of a resignation and operated in law to vacate the office which he held prior to that time, his appointment to the office in question was without power, and he was incapable to accept it. The inquiry then is whether he held, at the time that the mayor of New York made the appointment, the federal office which it is admitted he held prior to his retirement on the 30th day of June, 1888. This inquiry will be aided very materially by ascertaining definitely and precisely what that office was and what relations, if any, the defendant continued to hold to it after his retirement from active service. We are informed by the agreed case that the office which he held was that of "chief of engineers, United States army, with the rank of brigadier-general." There is but one such office, and the defendant alone was chief of

engineers and he held no other office.   There is but one briga-
dier-general in the corps of engineers, United States army,
and has been but one since 1885.   It will be observed that the
title brigadier-general applied to the defendant before his
retirement, was used to designate not the office which he held,
but his military rank and position as a member of the army.
The actual office which conferred powers and imposed duties
upon the defendant was that of chief of engineers, and unless
the people can show that he continued to hold that office after
his retirement from active service, this action must fail.   It is
within the power of the legislative department of the federal
government to enact that military offices shall become abso-
lutely vacant when the incumbent shall reach a certain age,
and this, we think, is the effect of the legislation providing for
the retirement of army officers at the age of sixty-four.   The
statute provides that retired officers "shall be withdrawn from
command and from the line of promotion" (§ 1255) and, in
effect, that they "shall not be assignable to any other duty."
It is difficult to conceive of the existence in this country of a
military office without the power of command, the right of
promotion or the obligation to perform some duty.   The stat-
ute evidently contemplated the vacation of the office by retiring
army officers, and in terms produces such vacancy as completely
as in cases of death or resignation.   It provides that "the
vacancies consequent upon such retirement" shall be filled by
promoting to the place of the officer retired the next in rank,
according to the established rules of the service.   There was,
of course, no vacancy to fill and no one could be promoted to
the defendant's place, as an officer, so long as he himself held
the office.   This was the practical construction given to the
statute not only by the government but by the defendant him-
self.   He left the seat of government, where the duties of the
office required him to be, and removed to New York, and has
never since performed any of the duties.   The president and
senate proceeded to fill the vacancy thus created by the appoint-
ment of another person to the office of chief of engineers, who
has since performed the duties and filled it, thus actually dis-

placing the defendant. It seems to us, therefore, that after all this, it cannot be said that the defendant continued to hold the office of chief of engineers, and we do not understand that the argument for the plaintiff asserts any such proposition. It is claimed, however, that he still continued to hold the office of brigadier-general. In order to adopt this proposition, we would be obliged to hold that the defendant, prior to his retirement, filled two offices, that of chief of engineers and that of brigadier-general, and that he has vacated the former and retained the latter. He is unquestionably entitled to wear the uniform of a brigadier-general and to assume that title, but this term is not now, and was not before his retirement, descriptive of any office which he holds or then held but, as has been observed before, of his military rank and dignity. The obvious effect of the act of congress was to legislate the defendant out of office when he reached the age of sixty-four, securing to him out of office and in retirement, the military rank, pay and privileges which were attached to, and incidents of, the office vacated. The policy was to relieve officers, approaching old age, from the duties of office and the office itself, supplying the vacant place with others next in rank, and granting to those in retirement by special enactments, the emoluments, rank and privileges enjoyed by them when incumbents of the office, in consideration of meritorious services and honorable behavior. The enjoyment, by retired army officers of these special advantages is easily confounded with the possession and enjoyment of the office itself, but they are in fact, different and distinct things. The right to the rank, uniform and pay of a brigadier general, specially retained to the defendant on retirement by the statute, is no test of the question whether he in fact holds a federal office. The liability to trial by court martial for offences against the military code was assumed by the defendant when he joined the army and as his name is still retained upon the roll, and as he is permitted to wear the uniform and receive a portion of the pay, of the rank upon which he was retired, the government still retains some control over his conduct, and while relieving him from office, has

retained this liability. A person may, of course, be subject
to the rules and articles of war, and to trial by court martial
without, necessarily, holding a federal office. He is liable to
be assigned to duty at the Soldiers' Home, if selected for that
purpose, by the commissioners of that institution, and this
selection is approved by the secretary of war. Such appoint-
ment and approval might, and probably would, confer upon
the appointee the character of a federal officer, but until that
is done, it cannot be said that this liability is any proper test
of the question under consideration, and this is also true in
regard to the provision permitting a retired officer to be
detailed, on his own application, to serve as professor in any
college. It is suggested that as defendant is still a member of
the army, as constituted by the federal statutes, he is, for that
reason, subject to be assigned to duty by the president and
congress. That may be so, and when such assignment is made
he may then hold a federal office not held by him when the
mayor made the appointment in question.

A public office has been defined by this court to be
"a permanent trust to be exercised in behalf of the govern-
ment or all citizens who may need the intervention of a
public functionary or officer. * * * It means the right
to exercise generally, and in all proper cases, the functions of
a public trust or employment, and to receive the fees and
emoluments belonging to it, and to hold the place and per-
form the duty for the term and by the tenure prescribed by
law." (*In re Hathaway,* 71 N. Y. 238.) And by the Supreme
Court of the United States as "a public station or employment
conferred by the appointment of government; and embraces
the ideas of tenure, duration, emoluments and duties."
(*U. S.* v. *Hartwell,* 6 Wall. 385; *U. S.* v. *Germaine,* 99
U. S. 508.) Neither of these definitions, we think, apply
to the defendant, after his retirement, and at the time the
appointment in question was made, and we can find nothing
in the circumstance that he was entitled, under the act of
congress, to certain rights and privileges and subject to the
rules and articles of war, that brings the case within the policy

of the disqualifying clause of the statute, whether that policy was to secure to the state under the authority of which the appointment was made, the benefit of his undivided time and talents or to guard against the influences to which the occupancy of a federal office might subject him. The decisions cited from the Court of Claims and the United States Supreme Court (*U. S.* v. *Tyler*, 105 U. S. 244), hold that retired officers are in the military service of the United States in the sense that they are entitled to what is known as longevity pay. That proposition may be, and is, conceded, but it does not prove that such a privilege secured by special statute in the nature of compensation for years of past faithful service makes the beneficiary the incumbent of a federal office. The case of the *State* v. *DeGress* (53 Tex. 387), certainly does hold that an army officer on the retired list holds a federal office within the meaning of a statute of that state, similar to the provision contained in chapter 584 of the Laws of 1888. That conclusion was reached, however, by assuming that such a result must necessarily follow from the federal decisions holding that he is in the military service and a member of the army, considerations which, we think, do not control the question. The defendant did not, in our opinion, hold a federal office, when appointed by the mayor, within the meaning of the statute, and the judgment of the courts below in his favor should be affirmed.

All concur, except Andrews, J., not voting.

Judgment affirmed.