Commonwealth ex rel. Crow, Appellant, *v.* Smith.

Argued November 26, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Anthony J. Cavalcante,* for appellant.

*W. F. Lane,* for appellee.

OPINION BY MR. JUSTICE STERN, January 5, 1942:

The question is whether relator, William J. Crow, a commissioned officer in the Officers' Reserve Corps of

the United States, now called into active service as a major in the army, can continue to hold the office of mayor of the City of Uniontown.

Crow became mayor on the first Monday of January, 1940, his salary being $200 a month. On May 27, 1941, the President proclaimed a national emergency, and all members of the Officers' Reserve Corps were ordered to active duty. Crow, who had been a commissioned officer in the Reserve Corps since 1925, was appointed a major in the United States Army, his compensation, with perquisites, being approximately $430 per month. On June 4, 1941, he reported for duty at Aberdeen Proving Grounds, Aberdeen, Maryland, where he is still stationed, or at least was stationed at the time this case was argued. On July 8, 1941, the Court of Common Pleas of Fayette County appointed respondent, George B. Smith, as mayor in place of Crow. The latter thereupon filed a suggestion for a writ of quo warranto and, the writ having been granted, respondent moved to quash it. From an order of the court quashing the writ relator appeals.

As far as the question of practice is concerned, respondent's use of a motion to quash was proper, because the statutory duty of a respondent to plead or demur "has not displaced the motion to quash as a method of calling attention to a fatal defect of substance in the suggestion": *Commonwealth ex rel. Margiotti v. Union Traction Co.,* 327 Pa. 497, 511, 512, 194 A. 661, 668.

If the problem before us were one merely of public policy, much, no doubt, could be said on both sides. On the one hand it might be urged that if public office had to be surrendered upon accepting a commission in the army it would unjustly penalize those who are patriotically giving their services to the Republic in this critical hour. On the other hand there must be borne in mind the fact that practically all who are leaving their civilian occupations for military service—whether professional or business men, artisans or unskilled laborers — are

thereby surrendering the profits, salaries and wages pertaining to their ordinary vocations, and the question would naturally arise why those holding public office should be exempt from making the same sacrifice that falls to the lot of others who join the armed forces. Furthermore, paramount as is the importance of the military service, the administration of municipal government must go on during the emergency, and a city cannot be properly managed by an executive who, having been commissioned in the army, will presumably, under existing legislation, serve therein for the uncertain duration of the war, and, during all the years of his term of office as mayor, may be stationed in a remote part of the country or even of the world.

These arguments, pro and con, are not for consideration by a court. The question before us is purely a legal one, and arises by virtue of Article XII, section 2, of our Constitution, which provides that: "No . . . person holding or exercising any office or appointment of trust or profit under the United States shall at the same time hold or exercise any office in this State to which a salary, fees or perquisites shall be attached." This constitutional provision is self-executing: *DeTurk v. Commonwealth*, 129 Pa. 151, 160, 18 A. 757, 758. It leaves open for determination only whether a major in the United States Army holds and exercises an office of trust or profit under the United States. As to this there can be no debatable question. In dignity, responsibility, executive requirements, indefinite but prolonged tenure, compensation, and all other controlling features, the position constitutes an office—confirmed by the very designation "officer"—and one not only of profit but of the highest possible trust. Nearly all the other states of the Union have similar provisions in their constitutions, and practically all of them hold that the acceptance of a commission as an officer in the army amounts to an automatic vacation of a salaried office under the State: *State v. Sadler*, 25 Nev. 131, 173, 58 P. 284, 289; *Chis-*

holm v. *Coleman,* 43 Ala. 204, 215, 216; *Lowe v. State,* 83 Tex. Cr. R. 134, 201 S. W. 986; *Fekete v. City of East St. Louis,* 315 Ill. 58, 145 N. E. 692; *People ex rel. Ward v. Drake,* 60 N. Y. Sup. 309, 43 App. Div. 325, affirmed 161 N. Y. 642, 57 N. E. 1122; *State ex rel. Oliver v. Mayor of Jersey City,* 63 N. J. L. 96, 42 A. 782, reversed on other grounds 63 N. J. L. 634, 44 A. 709.[1] Indeed, the Act of Congress of July 1, 1930, c. 784, 46 Stat. 841, as amended by the Act of June 15, 1933, c. 87, §3, 48 Stat. 154, U. S. C. A. Title 10, §372, in providing that "Members of the Officers' Reserve Corps, *while not on active duty,* shall not, by reason solely of their appointments, oaths, commissions, or status as such, or any duties or functions performed or pay or allowances received as such, be held or deemed to be officers or employees of the United States, or persons holding any office of trust or profit or discharging any official function under or in connection with any department of the Government of the United States," suggests, by innuendo, that officers

---

[1] Other cases are distinguishable: In *Carpenter v. Sheppard,* 135 Tex. 413, 145 S. W. 2d 562, an amendment to the constitution of Texas which was designed to overcome the decision in the *Lowe* case, expressly exempted officers of the Reserve Corps from the prohibition against holding an additional office. In *Kennedy v. Cook,* 285 Ky. 9, 146 S. W. 2d 56, a captain in the National Guard whose unit was ordered into the active military service of the United States was held not to hold an office under the United States because, as a national guardsman, he still acted under the commission issued to him by the governor of the state and was not commissioned as an officer in the United States Army. The cases of *State v. Joseph,* 143 La. 428, 78 So. 663, and *Johnston v. Chambers,* 148 Ga. 768, 98 S. E. 263, concerned members of local draft boards under the Selective Service Law of 1917, and it was held that they were not officers of the United States but were merely performing certain duties assigned to them. In *Reed v. Sehon,* 2 Cal. App. 55, 83 P. 77, *People v. Duane,* 121 N. Y. 367, 24 N. E. 845, and *Andrew Geddes v. The United States,* 38 Ct. of Claims Rep. 428, the persons under consideration were *retired* officers. The only case which is really contra to the general line of authority in regard to commissioned officers of the United States Army in active service is *McCoy v. Board of Supervisors of Los Angeles County,* —— Cal. ——, 114 P. 2d 569, the reasoning of which is not persuasive.

of the Reserve Corps, when they *are* on active duty, must be deemed to be persons holding an office of trust or profit under the United States.

Article XII, section 2, of the Constitution contains the additional clause that, "The General Assembly may by law declare what offices are incompatible." Such laws have been passed from time to time,[2] but the power thus given to the legislature does not restrict the operation of the first part of the section nor permit of a legislative nullification of the inhibition which it contains: *De Turk v. Commonwealth*, 129 Pa. 151, 160, 18 A. 757, 758. If the incapacity of relator to hold the office of mayor after entering into active military service resulted merely from the provisions of the Act of May 15, 1874, P. L. 186, it would be necessary to consider the effect of the Act of July 2, 1941, P. L. 231, amending that statute so as to make it inapplicable to a person called into the active military or naval service of the United States during a war or emergency. But relator's disability arises not from any legislation but from the Constitution of the Commonwealth; moreover, the Act of 1941 became effective only on the date of its enactment, July 2, 1941, whereas it was on June 4, 1941, that relator, by entering upon active duty in the army, vacated his office as mayor of Uniontown.[3]

The order of the court quashing the writ of quo warranto is affirmed; costs to be paid by appellant.

---

[2] Act of May 15, 1874, P. L. 186; Act of May 18, 1876, P. L. 179; Act of April 23, 1909, P. L. 151; Act of May 28, 1915, P. L. 579; Act of July 2, 1941, P. L. 231.

[3] Ordinarily, one holding two incompatible offices is allowed to elect which he desires to resign; if he declines or neglects to make a choice the court determines which office he should be compelled to relinquish: *Commonwealth ex rel. Ryan v. Haeseler*, 161 Pa. 92, 97, 28 A. 1014, 1015; *Commonwealth ex rel. v. Snyder*, 294 Pa. 555, 561, 144 A. 748, 749; in the present case, however, there is no choice possible since it is not within the power of relator to resign from his office in the army.