## Federal Employes as Notaries Public

ADAMS, Deputy Attorney General, June 30, 1950.— This office is in receipt of your request for an opinion as to whether Federal employes are eligible to hold the office of notary public in Pennsylvania.

You mention the opinion of former Deputy Attorney General Fred C. Morgan, dated February 26, 1941. This opinion was based upon the conclusion that the phrase "any person holding or exercising any

office" and the phrase "or appointment of trust or profit under the United States" are synonymous terms. This opinion, and two prior opinions in 1921 and 1926, of this department, held, in substance, that if the applicant for a commission as notary public was a Federal employe he was eligible for said appointment; if a Federal office holder, he was ineligible. This interpretation of the law continued to be followed and then the question involved in formal opinion no. 597, dated July 13, 1949, 68 D. & C. 151, arose.

Prior to the request for formal opinion no. 597, supra, the Supreme Court of Pennsylvania had rendered decisions in Commonwealth ex rel. Crow v. Smith, 343 Pa. 446 (1942), and Commonwealth ex rel. Adams v. Holleran, 350 Pa. 461 (1944).

The effect of these two decisions is that regardless of whether a person is commissioned or not, any member of the armed forces on actual duty is the holder of an office of trust or profit under United States, within the meaning article XII, sec. 2, of our Constitution. This section reads as follows:

"Incompatible Offices. No member of Congress from this State, nor any person holding or exercising any office or appointment of trust or profit under the United States, shall at the same time hold or exercise any office in this State to which a salary, fees or perquisites shall be attached. The General Assembly may by law declare what offices are incompatible."

It is to be noted that in the case of Commonwealth ex rel. Adams v. Holleran, supra, the court said, at page 465:

"We see no reason why there should be a line of demarcation between a commissioned and a noncommissioned member of our armed forces. We think the constitutional prohibition was intended to apply with the same force and equality to both. It was the intention of the makers of the Constitution to promote,

as far as possible, a sound public policy. And certainly it is in the public interest to require that an elected or appointed officer be confined to the performance of the duties of his office, and prevented from leaving it without resigning to take office or employment elsewhere. In good public service a man cannot serve two masters or perform the duties of different offices—one in the State and the other in the United States, maybe under our flag in the Philippines. It is manifest that absurdities and chaos might result if it were otherwise. Civil government must be maintained. It is possible that a majority, or even the whole membership, of the Board of Commissioners of Stowe Township could have been drafted into the armed service of the United States and sent abroad for the duration of World War II. If this happened, and the places were not filled, civil government in that township would cease to exist and for an indefinite time. Carried to the extreme, such a condition, happening in many places, could result in the breakdown of civil government generally.

"It is absurd to say that some high official in the public life of Pennsylvania can leave his office and duties, enlist as a private soldier, go away to war, and retain his office and salary, but that if he enters the service as a commissioned officer and does the very same thing he cannot retain his civil office and salary. One-half of this situation was resolved by our decision in Com. ex rel. Crow v. Smith, supra, and the other one-half is now resolved by our decision in this case. There is no separation or distinction, the constitutional prohibition applies alike to all persons in our armed forces, whether commissioned or not.

"At the time of his ouster from the office of township commissioner, Lubic was holding two incompatible offices. It is clear that he could not serve his country in the Navy and perform the duties of township

commissioner at the same time. For his naval duties would not only require him to be absent from the township, but in all probability from the country itself. Since he has no choice as to the continuance of his naval duties, his civil office must be declared vacant, as of the time of his induction. The reason that one cannot hold two incompatible offices is one of public policy, with a view of attaining the best possible government.

"Since each person in the armed forces of the United States holds an office which would bring him within the prohibition of Article XII, Sec. 2, of the Pennsylvania Constitution, it follows that upon Lubic's induction into the Navy his office of township commissioner was automatically vacated. . . ."

As a result of the above decision that each person in the armed forces of the United States holds an office, it seems reasonable to conclude that every Federal employe would likewise be held to be the holder of a Federal office. The courts, in reaching their decisions, have interpreted article XII, sec. 2, of the Constitution as evidence of the intention of the makers of the Constitution to promote a sound public interest requiring an elected or appointed officer to be confined to the performance of the duties of his office and prevented from leaving it without resigning it to take office or employment elsewhere.

We touched upon this in formal opinion no. 597, dated July 13, 1949, supra, wherein we advised that persons otherwise qualified to hold the office of notary public in Pennsylvania are not disqualified solely by reason of their holding reserve commissions in the armed forces of the United States or in the federally recognized National Guard. Formal opinion no. 597 was based upon the decision of the Supreme Court in Commonwealth ex rel. Crow v. Smith, 343 Pa. 446 (1942) where, at pages 449-450, the court said:

". . . Indeed, the Act of Congress of July 1, 1930, c. 784, 46 Stat. 841, as amended by the Act of June 15, 1933, c. 87, §3, 48 Stat. 154, U. S. C. A. Title 10, §372, in providing that 'Members of the Officers' Reserve Corps, *while not on active duty*, shall not, by reason solely of their appointments, oaths, commissions, or status as such, or any duties or functions performed or pay or allowances received as such, be held or deemed to be officers or employees of the United States, or persons holding any office of trust or profit or discharging any official function under or in connection with any department of the Government of the United States,' suggests, by innuendo, that officers of the Reserve Corps, when they are on active duty, must be deemed to be persons holding an office of trust or profit under the United States." (Italics supplied.)

We have been able to find no similar provision with regard to Federal employes generally, as appears in section 37 of The National Defense Act of June 4, 1920, 41 Stat. at L. 759, as added by the Act of July 1, 1930, 46 Stat. at L. 841, as amended, 10 U. S. C. §372.

It follows that each application by a Federal employe for appointment as a notary public must be decided upon its facts, and a determination must be made as to whether or not the Federal employe can perform the duties of a notary public while also performing the duties of his Federal office. When the determination is made that, by reason of his duties as a Federal officer, he cannot perform the duties of a notary public, the application should be denied. When a finding is made that he can perform his duties as a Federal officer and at the same time those as a notary public, the application should be granted.

We are of the opinion, and you are accordingly advised, that each application for appointment as a notary public by a Federal employe must be decided upon its facts, and when a determination is made that

by reason of his duties as a Federal officer, an applicant cannot perform the duties of a notary public, the application should be denied. When a determination is made that his duties as a Federal officer will not interfere with his duties as a notary public, the application should be granted.