(43 App. Div. 325.)

PEOPLE ex rel. WARD v. DRAKE et al.

(Supreme Court, Appellate Division, Fourth Department. October 13, 1899.)

1. MUNICIPAL CORPORATIONS—EMPLOYES ENLISTING IN UNITED STATES ARMY—HOLDING OTHER OFFICE.

Under Laws 1891, c. 105, § 475 (Buffalo City Charter), prohibiting any salaried officer of the city from holding any other public office during his incumbency, a superintendent of the bureau of water, accepting a commission in the United States army, forfeited his position, notwithstanding a resolution of the city council that employés enlisting for service should not lose their positions, or the granting of a leave of absence by the board of public works.

2. SAME—VACANCIES BEFORE PASSAGE OF LAW.

Laws 1899, c. 653, providing for payment of employés of Buffalo who enlisted, and, after discharge, returned to their employment, did not apply to vacancies occurring before its passage, nor did it affect the tenure of office of such employés.

3. SAME—TERM OF OFFICE.

Under Buffalo City Charter, § 273, vesting the appointment and removal of superintendents of the bureau of water in the board of public works, as the duration of their term was not declared by law, such officer held office at the pleasure of the appointing board, and could not maintain mandamus for reinstatement, though the board violated its resolution granting leave of absence, and permanently appointed his successor, and without notice to him.

4. SAME—VETERAN ACT.

Laws 1899, c. 370 (White Civil Service Law), prohibiting removal of honorably discharged soldiers from municipal employment except for incompetency, after a hearing, etc., does not apply to a removal occurring before its passage.

Appeal from special term, Erie county.

Mandamus by the people, on the relation of Francis G. Ward, against Marcus M. Drake and others, constituting the board of public works of Buffalo, N. Y. There was an order denying a writ of peremptory mandamus, and relator appeals. Dismissed.

In May, 1896, the relator was appointed water superintendent of the bureau of water by the board of public works in the city of Buffalo, and was the incumbent at the time of his enlistment in the military service. At the time of the outbreak of the Spanish-American War the common council of that city passed a resolution providing that any employé of the city who enlisted for service during the war should not lose his position by reason of his military service. On April 28, 1898, a like resolution was passed by the board of public works. The relator enlisted July 5, 1898, and afterwards, at his suggestion, the board granted him formal leave of absence for two weeks, and on the 16th day of August adopted the following resolution, viz.: "Resolved, that the application of Lieutenant Colonel Francis G. Ward, superintendent bureau of water, for leave of absence during term of service in the United States army, be received, filed, and granted, same to be without pay during time of absence." The relator was appointed lieutenant colonel of the 202d regiment, and continued in the service until April of the present year, when he was honorably discharged. At the time leave of absence was granted him, Frank J. Illig was temporarily appointed to the position during the relator's absence. January 5, 1899, another resolution was passed by the board of public works again granting an indefinite leave of absence to Col. Ward, and at the same time it adopted the following resolution, viz.: "That the appointment of Frank J. Illig to the position of superintendent of water, temporarily, be, and the same is hereby, made permanent. Adopted." Mr. Illig was then holding the position under the temporary appointment, and gave the requisite bond, and has since continued in the office under the resolution last referred to. On April 15, 1899, the military service of Col. Ward was terminated by honorable discharge, and he applied for reinstatement in the position of water superintendent, which was refused, and a peremptory writ was thereupon applied for and refused, and the alternative writ was granted.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

Simon Fleischmann, for appellant.
Henry J. Killeen, for respondents.

SPRING, J. Section 475 of chapter 105 of the Laws of 1891, which is the charter of the city of Buffalo, provides:

"No person elected or appointed to any salaried office under this act shall, during his term of office, hold any other public office whatever, except that of notary public or commissioner of deeds. * * * If any person holding any salaried office under this act shall accept any other public office, he shall thereby cease to hold the office under this act."

The relator was holding the office of water superintendent, a position of trust and importance, which carried with it an annual salary of $3,000. He accepted a commission in the United States army as lieutenant colonel of the 202d regiment. This act was in diametric violation of the section quoted. The fact that this was done under an explicit resolution of the board by which he was appointed to said position, and to which he was subordinate, does not relieve the rigor of the statute. The subsequent conduct of the board in disregarding the purpose of the resolution may have been reprehensible and vacillating, but that does not alter the situ-

ation. The charter, in unmistakable terms, has defined the effect of the acceptance of another office by a city official, and the board of public works possesses no authority to nullify that section. It could not make a contract transcending the boundaries of its power as circumscribed by the charter. A person holding a military commission is an officer, and within the operation of this statute. In the case of People v. Duane, 121 N. Y. 367, 24 N. E. 845, the respondent had been appointed chief of engineers, with the rank of brigadier general in the United States army, and the question involved was his right to hold the office of commissioner of the new aqueduct, to which he had been appointed by the mayor of the city of New York. The respondent had retired from the military service by reason of attaining the age of 64 years, and on that account he was held to be eligible for the civil office. The court, however, in discussing the effect of his retirement, used the following language, at page 372, 121 N. Y., and page 846, 24 N. E.:

"That the defendant held a federal office up to the time he was retired from the service, within the meaning of the disqualifying words of the statute, is assumed by both parties to the controversy, and cannot be doubted; and unless his retirement from active service, under the act of congress, had the effect of a resignation, and operated in law to vacate the office which he held prior to that time, his appointment to the office in question was without power, and he was incapable to accept it."

In Oliver v. Mayor, etc., of Jersey City (N. J. Sup.) 42 Atl. 782, one Smith, one of the water commissioners of the city, volunteered in the United States army during the Spanish-American War, and was mustered in as colonel of a regiment. The statute governing an official of this kind was closely akin to the statute applying to the city of Buffalo, and the supreme court in New Jersey, in deciding that the acceptance of the colonelcy ipso facto created a vacancy in his city office, say, at page 784:

"By the express words of the statute, upon the acceptance by Smith of the office of colonel in the United States army his office of commissioner became vacant, and his vote for this ordinance, when its validity is directly challenged by certiorari, cannot be efficacious to give it the quality of regularity, and consequent legality, because it lacked the essential number of votes. Many adjudged cases and the text writers unite in maintaining this view of the law."

In Kerr v. Jones, 19 Ind. 351, Benjamin Harrison was state reporter, and accepted a colonel's commission in the United States army during the Civil War, and it was held that this created a vacancy in the office of reporter. To the same effect are Rowland v. Mayor, etc., 83 N. Y. 376; People v. Nostrand, 46 N. Y. 375; People v. Common Council of City of Brooklyn, 77 N. Y. 503; State v. Allen, 21 Ind. 516.

There are many cases, some of which are cited by the learned counsel for the appellant, where the question hinged on the incompatibility of the two offices, like Bryan v. Cattell, 15 Iowa, 538, and People v. Hanifan, 96 Ill. 420. Those cases, however, are not based upon a statute in plain terms indicating that the acceptance of another office by the officeholder creates a vacancy, and that fact makes the clear distinction from this case. People v. Nostrand, page 381, supra. The conclusion seems inevitable, therefore, that

when the relator accepted a position from the United States government that ended his official life as water superintendent.

Chapter 653 of the Laws of 1899, which provided for the payment of employés of the city of Buffalo who were mustered into military service, did not take effect until May 25, 1899, and the vacancy had occurred long prior to that time, so that act has no application to this case. That enactment simply gave authority to the departments of the city to pay soldiers and sailors of the Spanish-American War, who were in the employ of the city at the time of their enlistment, and, after their discharge, had returned to the employ of the city, the compensation they would have been entitled to if they had continuously remained in their civil positions. The tenure of office was not affected by it.

There is still another obstacle to the relator's right to be reinstated to the superintendency. By section 273 of the revised city charter, the appointment and removal of the relator were vested in the board of public works, without restriction. The duration of the term was not declared by law, so that, under the constitutional provision, the incumbent held the office at the pleasure of the appointing board. Section 3, art. 10, of the state constitution. As was said by the court of appeals in People v. Robb, 126 N. Y. 182, 27 N. E. 267:

"With respect to the tenure or duration of a public employment, such as the relator had at the time of his dismissal, the general rule is that, where the power of appointment is conferred in general terms, and without restriction, the power of removal, in the discretion and at the will of the appointing power, is implied, and always exists, unless restrained and limited by some other provision of law."

See, also, In re Hennen, 13 Pet. 235–239, et seq.; People v. Lathrop, 142 N. Y. 113, 36 N. E. 805.

After Col. Ward had been absent from home for several months, the board of public works permanently appointed his successor by resolution, and that appointee accepted the office, and gave the bond required by statute. If there was then no vacancy in the office, that act on the part of the board was tantamount to the removal of the relator. Inasmuch as the power to remove was unconditionally intrusted to the board of public works, the appointment of his successor effectuated its intention, and no notice of such removal was essential to give it validity. Holley v. Mayor, etc., 59 N. Y. 166. The statute awarding the power to remove does not prescribe that such action shall be preceded by notice to the incumbent, or be based upon charges against him. An opportunity to be heard is not a prerequisite. The discretion is vested with the board, and it can decapitate its appointees without rhyme or reason. People v. Whitlock, 92 N. Y. 191.

Col. Ward was not appointed after a competitive examination, and it is not contended that the general prohibition in the civil service law, forbidding the removal without a hearing of the officials holding by virtue of their rank in the eligible list, is germane to this case. Only those in the competitive class are entitled to be heard before they can be ejected from office. People v. Keller, 158 N. Y. 187, 52 N. E. 1107.

It is contended with much earnestness by the counsel for the relator that the White civil service law (chapter 370, Laws 1899) is applicable to this case. By that enactment, no removals of honorably discharged soldiers can be made, except for incompetency or misconduct, shown after a hearing upon proper notice. That act did not become operative until April 19th of this year, and the acts which ended Col. Ward's official service occurred long prior to its passage. The relator was not a veteran at the time of his enlistment, and hence the veteran act has no relation to him.

The motion was for a writ of peremptory mandamus. The question of the relator's right to this remedy in any event is not free from embarrassment, especially as he seeks reinstatement by this proceeding to an office in the possession of another under color of right. Under the veterans' acts, resort to this remedy is expressly given by statute, and this is true of the White law; but it has long been held that the action of quo warranto, making the actual holder of the office a party, is the proper method of determining the title of the claimant to an office. People v. Stevens, 5 Hill, 616; People v. Goetting, 133 N. Y. 569, 30 N. E. 968; People v. Brush, 146 N. Y. 60, 40 N. E. 502. In this case, however, the court at special term denied the peremptory writ, but granted an alternative writ. There was no question of fact to be passed upon, and, if mandamus was the proper remedy, the relator should have been granted the relief he sought.

As our interpretation of the law goes deeper than the remedy, we direct the dismissal of the petition, but without costs. All concur, except SMITH, J., not voting.