## Ex Parte Archie Dailey.

No. 7393.   Decided December 13, 1922.

**1.—Habeas Corpus—Contempt—National Guard—District Judge.**

Where relator refused to answer questions propounded by the grand jury, claiming that the district judge had vacated his office by accepting a commission as captain in the National Guard of the State of Texas, and therefore was without authority either to impanel the grand jury, or to enter an order adjudging relator guilty of contempt. Held, that this contention is untenable, and relator is remanded to custody.

**2.—Same—National Guard—Federal and State Power—Control of Militia— Officers of the United States.**

The United States has no power delegated to it to govern or control the militia, save such part of them as may be employed in its service, and officers of the National Guard are not appointed in any of the modes designated by the Constitution for appointment of officers of the United States.

**3.—Same—National Guard—Actual Service—District Judge.**

Not until the National Guard is called into active service of the Nation do the officers become subordinate to the orders of the President; until this contingency arises the National Guard of Texas and all officers thereof are subject to the order of the Governor of this State, and where the district judge in question had not been called into the actual service of the United States he did not vacate his office by accepting appointment of captain in the National Guard.

**4.—Same—Constitutional Law—Statutory Law—Civil Office.**

Section 40 of Article 16 of the Constitution of Texas uses the word "civil" as therein employed to designate matters that were not military, and both the Constitution and the statutes plainly recognize the officers in the National Guard as military officers, and the fact that the district judge was holding a commission as captain in the National Guard of Texas he was not thereby holding two civil offices.

**5.—Same—Propriety of the Situation—District Judge—National Guard.**

This court is not concerned with the propriety of the situation, nor will it discuss questions which might arise under certain contingencies, if a district judge was holding a commission as an officer in the National Guard, and relator will be remanded to custody.

From Hill County.

Original Application for Writ of Habeas Corpus, asking release from custody under an order of the district judge committing relator for contempt in refusing to testify as a witness before the grand jury.

The opinion states the case.

*Frazier & Averitte,* for relator.—Cited, *Lowe v. State,* 201 S. W., Rep., 986, and cases cited in the opinion.

*R. G. Storey* and *C. L. Stone,* Assistant Attorney General, for the State.

*Jno. Abney* and *S. W. Davis* for Horton B. Porter.—Cited, Lattimore v. State, 145 S. W. Rep., 588; Manley v. State, 137 id., 1137; Wood v. U. S., 27 L. Ed., 542, and cases cited in the opinion.

HAWKINS, Judge.—Relator makes original application to this court for writ of habeas corpus to release him from custody under an order made by the District Court of the 66th Judicial District (Hill County) committing relator for contempt in refusing to testify as a witness before the grand jury. He refused to answer questions propounded by the grand jury claiming that the district judge had vacated his office by accepting a commission as Captain in the National Guard of the State of Texas, and therefore was without authority either to empanel the grand jury or to enter an order adjudging relator guilty of contempt.

The agreed statement of facts shows that Hon. Horton B. Porter was elected Judge of the 66th Judicial District in November, 1918, and qualified for such place about December 1, 1918; that on or about the

30th of December, 1921, while serving as such district judge he accepted an appointment in the National Guard of the State of Texas as Captain of Company L, 143 Infantry, and was on the 27th day of July, 1922 commissioned by the Governor of the State of Texas as said Captain and duly qualified by taking the following oath:

"I, Horton B. Porter, do solemnly swear that I will support and defend the Constitution of the United States and the constitution of the State of Texas against all enemies, foreign or domestic; that I will bear true faith and allegiance to the same; that I will obey the orders of the President of the United States and of the Governor of the State of Texas; that I make this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office of Captain in the National Guard of the United States and of the State of Texas, upon which I am about to enter, so help me God.

(Signed) Horton B. Porter."

Said Horton B. Porter since qualifying as district judge and taking the oath in question as Captain of the National Guard has been performing the duties incumbent on him as such judge and as such Captain of the National Guard. As district judge he is entitled to and will draw the sum of four thousand dollars per year; as Captain of the National Guard he is entitled to and will draw as compensation for his services six dollars and sixty-six cents for each drill night that not less than sixty per cent of the enlistment of the said Company L shall assemble for drill; as said Captain of the National Guard he is entitled to further compensation in the sum of $240 per annum as custodian and care taker of all property issued to said Company L by the State of Texas and is held accountable to said State for any loss, damage or dissipation of property issued to said company.

The question involved brings in review two sections of Article 16 of the State Constitution.

Section 12 provides:

"No . . . person holding or exercising any office of profit or trust under the United States . . . shall . . . hold or exercise any office of profit or trust under this State."

Section 40 of said article reads:

"No person shall hold or exercise, at the same time, more than one civil office of emolument, except that of justice of the peace, county commissioner, notary public and postmaster, unless otherwise specifically provided herein."

It is conceded to be the law that if when the Hon. Horton B. Porter accepted the commission as Captain of Company L in the National Guard he was then and thereafter "holding or exercising any office of profit or trust under the United States" he thereby vacated the office of

district judge, so our first inquiry must be directed to whether a Captain in the National Guard, which has not been called into the service of the United States, is holding or exercising an office thereunder.

The framers of the Constitution of the United States—recognizing the importance of trained militia which might be available for service of the National Government under certain contingences, but desiring to fully protect the respective States in their control of the militia—wrote into that document (Art. 1, Section 8, Sub. Div. 16) that Congress shall have power—

"To provide for organizing, arming, and discipling, the militia, and for governing such part of them as may be employed in the service of the United States, reserving to the States respectively, the appointment of the officers, and the authority of training the militia according to the discipline prescribed by Congress."

It will be observed that the United States had no power delegated to it to "govern" or control the militia save "such part of them as may be employed in" its service. Officers of the National Guard are not appointed in any of the modes designated by the Constitution for appointment of officers of the United States (U. S. Const. Art. No. 2, Sec. 2, Clause 2; U. S. v. Smith, 31 L. Ed. 534; U. S. v. Monat, 31 L. Ed. 463; U. S. v. Germaine, 25 L. Ed. 482); but appointments of National Guard officers was one of the attributes of State sovereignty specially withheld from the Federal Government. Art. 5802 R. S. of Texas provides:

"All officers of the National Guard of Texas shall be appointed and commissioned by the Governor, etc."

Appointment in the instant case was so made, and commission so issued. A military officer of the United States is subject to the orders of the President as his commander-in-chief; this is not the case with an officer in the National Guard. The Constitution of the U. S., Art. 2, Sec. 2, Clause 1, provides:

"The President shall be commander-in-chief of the army and navy of the United States, and of the militia of the several States when called into the actual service of the United States."

Not until the National Guard is called into actual service of the nation do the officers become subordinate to the orders of the President; until this contingency arises the National Guard of Texas, and all officers thereof, are subject to the orders of the governor of this State.

"He (the governor) shall be commander-in-chief of the military forces of the State *except when they are called into actual service of the United States.* He shall have power to call forth the militia to execute the laws of the State, to suppress insurrection, repel invasion, and to protect the frontier from hostile incursions by Indians and other predatory bands." (Art. 4, Sec. 7, Constitution of Texas).

The facts in this record do not show that Hon. Horton B. Porter as an officer in the National Guard of Texas had been called into actual

service of the United States.  Hence, we conclude that he did not vacate the office of district judge by accepting the appointment of Captain in the National Guard, and that Section 12, Art. 16 of our Constitution has no application in the instant case.  The cases of De-Gress v. State, 53 Texas 387 and Lowe v. State, 83 Texas Crim. Rep., 134, cited by relator do not support his contention. DeGress was a re-tired United States Army officer, on the pay roll of the United States and subject to orders of the President.  In the Lowe case the officer had been called into the actual military service of the United States, and his former status as an officer in the National Guard had been changed by such call.

It remains to be considered what effect, if any, section 40, Article 16 of our Constitution has upon relator's contention.  The framers of that instrument might have provided that no person shall hold more than *one office,* either civil or military: instead it provided that "no person shall hold or exercise at the same time more than one *civil office* of emolument, etc." It is apparent, we think, that the conven-tion which framed Section 40 of Article 16 used the word "civil" as therein employed to designate matters that were not military and as being opposed to the term "military" "The military shall at all times be subordinate to the civil authorities." Const. Art. 1, Section 24. "During the time he holds the office of Governor, he shall not hold any other office, civil, military or corporate." Const. Art. 4, Section 6.  That the Constitution and the Statutes plainly recognize the of-ficers in the National Guard as military officers there can be no doubt. Those who are generally known as civil officers are designated and their terms of office provided.  Article 5802, Rev. Civ. St. as amended by Acts of 1917, First Called Session, provides:

"All officers of the National Guard of Texas shall be appointed and commissioned by the Governor, and shall hold their position until they have reached the age of sixty-four years, unless retired prior to that time by reason of resignations, disability or for cause to be de-termined by a court martial or an efficiency board legally convened for that purpose."

No civil office within this State is provided for a term correspond-ing with that as fixed for officers of the National Guard as contained in the foregoing article.  Article 4, Section 7 of our Constitution pro-vides:

"He (the governor) shall be commander-in-chief of the military forces of the State except when they are called into actual service of the United States.  He shall have power to call forth the militia to ex-ecute the laws of the State, etc."

The military forces referred to in the above quoted article are the National Guard and the reserve militia. (Title 91, Chapter 1, Re-vised Statutes).  The State has no other military forces and these are the only military forces in the State that are liable to be called into the service of the United States.  The statute further classifies these

military forces into the active and reserve militia. Revised Statutes, Article 5764, Chapter 3, Title 91, 1911, defines the status and regulates the authority and duties of the members of the Texas National Guard. Throughout the chapter and the entire title membership in the organization is referred to as "military service;" the members are classified as "officers" and "enlisted men," the company, regiment, etc. are called "military organizations." The organization is required to conform as nearly as possible with that of the Army of the United States and the discipline conforms generally to that of the Army of the United States. Article 5860, Revised Statutes declares articles of war by which the "military forces of this State shall be governed," and to which all officers and privates are made amenable and under which they are to be tried by court martial. (Art. War, 35). All through the title relating to the National Guard appears a constant recognition that a "civil officer" is different and distinct from an "officer" of the National Guard. "All officers in the military service of this State shall be appointed and commissioned by the Governor." (R. S. Art. 5802). "All commissions in the military service of this state shall be in the name and by the authority of the State of Texas, etc." (Rev. St. 1911, Art. 5803). The governor is empowered in time of disorder to "issue his order to any commander . . . of the active militia of this state to appear at the time and place directed to aid the *"civil authorities,* etc." (Rev. St., Art. 5832.) The same article empowers the district judge of the judicial district in which the disorder occurs, under certain conditions, to call for aid from the commanding officer of the active militia therein or stationed near thereto, whenever the necessity for *"military aid"* in suppressing violence is immediate and urgent. The next article (5833) requires the officer to whom the order of the governor or other civil officer is directed to order his command to take the action necessary. It appears to us that Articles 5832 and 5833 apply the distinction to the very question now before the court. The district judge has authority to call upon the military authorities and is referred to as the "civil authority" because he is holding a civil office; the officer in command of the National Guard is referred to as furnishing "military aid." The commanding officer of the National Guard is to obey and execute such general instructions as he may receive from "civil authorities." (Art. 5834.) Article 5835 authorizes the governor to order the active militia to assist the "civil authorities" in guarding prisoners. Article 5836 authorizes the commanding officer of the active militia to forbid the sale of intoxicants, ammunition or explosives in the vicinity where his troops are stationed whether any *civil officer* has forbidden the same or not. Where the term "civil officer" is employed it is shown it is meant to exclude an officer of the militia. We are of opinion that a reading of the entire title and the various chapters of the Revised Civil Statutes relative to the National Guard makes it clear that an officer of that body is a "military" and not a "civil officer," and therefore are constrained to hold that under

the wording of Section 40, Article 16 of our Constitution that while the Hon. Horton B. Porter at the same time he was district judge of the 66th Judicial District was also holding a commission as Captain of Company L, 143 Infantry in the National Guard, he was not holding two *"civil offices."*

We are not concerned with the propriety of the situation, and neither have we discussed questions which might arise under certain contingences. If a district judge holding a commission as an officer in the National Guard was directed by the Governor to call out his company, or if he should find it necessary to do so upon his own initiative. it might be that judicial authority and executive authority would be lodged in the same individual. Then a different question would arise. That contingency is not presented in the case before us. Relator cites as supporting his contention the cases of Brinkerhoff v. State, 66 Texas, 45; Alsup v. Jordan, 69 Texas, 303; Odem v. School District, 234 S. W. Rep., 1093. An examination of these cases will reveal that the parties at whom inquiry was directed were undertaking to hold at the same time more than one *civil office* under the State. We do not find such to be the record in the instant case.

Having determined that relator's contentions can not be upheld, he is remanded to the custody of the sheriff to abide the judgment heretofore rendered by the district judge of the 66th Judicial District of Texas.

*Relator remanded to custody.*