FRAZIER *v.* ELMORE, COUNTY JUDGE, *et al.*

(*Knoxville*, September Term, 1942.)

Opinion filed July 3, 1943.

On Petition for Rehearing August 21, 1943.

JOEL H. ANDERSON, of Knoxville, for complainant.

KENNERLY & KEY, of Knoxville, for defendant Kelly.

W. L. AMBROSE, JR., of Knoxville, for defendant Elmore.

WILLIAM F. BARRY, Solicitor General, and THOMAS H. MALONE, III, Assistant Attorney-General, for the Attorney-General.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Complainant Frazier challenges the constitutionality of Chapter 4, Acts of 1943, seeks an injunction against its application to him, naming the County Judge, the disbursing officer, and the interim appointee of the Governor, defendants, and prays for a declaratory judgment.

Elected in August, 1942, to the office of Judge of the Knox County Court of General Sessions, created by Chapter 54, Private Acts of 1939, he was inducted in the military service of the United States in October, after serving as Judge for one month only, and thereupon removed from the State and ceased to perform the duties of the office. What position he holds in the United States military service does not appear.

██ ██ It is a matter of common knowledge, of which we take judicial notice, that numerous similar situations have arisen in the State, and it was to meet this emergency that the Legislature enacted Chapter 4, in January 1943, the obvious primary and fundamental purpose being to preserve to these incumbents these offices, despite their resulting failure to discharge the duties of their respective offices for the uncertain duration of the war; a further purpose being to provide against disruption of judicial and other essential governmental services. The caption of the Act reads: ''An Act to provide for the temporary filling of State and County offices when the regular incumbent is inducted into the military service of the United States.''

Section one provides that "such induction shall not operate to create a permanent vacancy in said office, but upon the return of said officer from said military service he shall be entitled to resume the duties of the office for the remainder of the term for which he was elected," etc.

Section two provides that "the duties of the office shall be discharged temporarily during the absence of such officer by some other person legally qualified . . . and selected in the manner hereinafter set out"; and, further, that the person so serving "shall receive the salary attached to said office payable out of the funds provided for that purpose," etc.

Section three provides for the appointment by the Governor of temporary judges, expressly including General Sessions Judges, when such vacancies occur in these judicial offices, and then provides for the filling of vacancies in other cases not pertinent here.

Section four provides that the Act shall include all branches of military service, and Section five for the giving of bonds and taking of oaths of office by the temporary incumbents.

Finally, quite apparently for the further benefit and protection of the absentees, it is provided by Section six that such temporary incumbents "shall be without power to remove any assistant or assistants appointed by the" regular incumbent.

It is the incidental provision in Section two for the payment to the temporary appointees, who may be performing the duties of the office, of the compensation attached to the office which complainant challenges as violative of the first paragraph of Section 7, Article VI, of the State Constitution, reading:

"The Judges of the Supreme or Inferior Courts shall, at stated times, receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished during the time for which they are elected."

The insistence of complainant below, sustained by the Chancellor, is that he is an inferior judge, within the protection of this constitutional provision, and that the effect of the statute, in the particular above noted, is to "diminish" his compensation during his term.

The defendants appeal and deny that complainant is a judge of an "inferior court," within the contemplation of this protective clause, and say he may not, therefore, invoke it.

We consider first a preliminary question, the right of complainant to maintain this suit, both because it is obvious that the Act he challenges was passed primarily to preserve to him his office, the benefits to him outweighing the temporary suspension of his salary, and because, without this saving law, he is in the attitude of violating both a provision of the identical section of the Constitution which he invokes, and an express requirement of the Act creating the office he claims to hold.

The clause above quoted from the Constitution is not all of this section. It proceeds: "They shall not be allowed any fees or perquisites of office, *nor hold any office of trust or profit under this State or the United States.*" (The italics are ours.)

If complainant is a judge of an inferior court within the protection of the first clause, as he contends, is he not now holding an office of trust and profit under the United States in violation of this second clause? If so, can he invoke the protection of the one clause, while violating the prohibition of the other? The bill does not

disclose the precise character of the duties, the nature of the military service he is rendering to "the United States," nor the compensation he is receiving, but however this may be, he is in a position of high "trust" and receives at least some financial compensation, some "profit." The term "office," in its context, must be given its broad meaning, so as to effectuate the apparent intent of the constitutional prohibition against a diversion or division of the time and labor, energies and abilities of judges of our courts, which might destroy, or diminish their capacity to discharge the exacting duties of their responsible positions; and also to limit them to one source of compensation. Webster defines "office" as an "assigned duty or function." Synonyms are post, appointment, situation, place, position; and "office commonly suggests a position of (especially public) trust or authority." Bouvier defines "office" as "a right to exercise a public function or employment, and to take the fees and emoluments belonging to it"; again, "a public charge or employment." 2 Bouv. Law Dict., Rawles Third Revision, p. 2401. The opinion of this Court in *Jones, Purvis & Co.* v. *Hobbs,* 63 Tenn., 113, at page 120, quotes Blackstone's definition of office as "a right to exercise a public or private employment, and to take the fees and emoluments thereto belonging."

We commonly refer to and describe those whose duty it is to preserve the peace as peace "officers," or law enforcement "officers"; a member of the police force, without regard to rank, is described as a "police officer." See *Smith* v. *Tate,* 143 Tenn., 268, at page 276, 227 S. W., 1026. In *State ex rel. Little* v. *Slagle,* 115 Tenn., 336, 89 S. W., 326, it was held that a deputy sheriff, although without a fixed term or compensation, dependent on fees,

is an "officer" within the constitutional provision (Art. 2, sec. 26) that no person shall hold more than one lucrative office at the same time; and the Court applied the common law rule that the acceptance of a second office incompatible with one then held is, *ipso facto,* a vacation of the first, citing *State ex rel. Bergshicher* v. *Grace,* 113 Tenn., 9, 82 S. W., 485, and numerous other cases. A later case re-affirming this rule is *Wallace* v. *Grubb,* 154 Tenn., 655, 289 S. W., 530, 531. Acceptance of a second appointment on a school board was held to vacate a former appointment. Authorities above cited were followed; and it is significant that this position was described as a "place," the descriptive term "office" not being employed. Said the Court: "One person could not hold two places. The occupancy of one place was incompatible with the occupancy of the other. So when Wallace accepted the second appointment, as a necessary consequence the place he held under the first appointment was vacated. This is too well settled under our authorities to require discussion," citing cases *supra.*

■ Whatever may be the post or station in the military service of the United States which complainant is occupying, he is in a place of trust and honor and is receiving compensation therefrom. And if not technically holding another "office," within the letter of the prohibition, he is certainly within its spirit. The letter killeth, the spirit maketh alive.

It would seem to follow that, but for the saving provision made for complainant below by the Act he challenges, he would not only be subject to removal for violation of the second clause of Section 7, Article VI, but might be held to have vacated his office of Judge by acceptance of an incompatible position under the United States.

Moreover, cumulative, and, perhaps, even more conclusive support is found for the argument that complainant is in no position to seek in equity the relief he prays for—to challenge the provision of this Act which diverts temporarily the emoluments of the office to the appointee who is performing all of its duties, during the non-performance and absence of complainant,—in the express language in Section ten of the legislative Act creating the office which he holds. Here it is provided that, "said judges shall give all their working time to the duties of their office." May complainant allege that, for whatever cause, he is now not giving, and probably will not give for a long though uncertain period, any of his "work and time to the duties of the office," and yet be permitted to restrain the payment of the emoluments of the office to the temporary substitute provided by law who is performing those duties?

We think it may fairly be assumed that the Legislature, which created this office, conceived that provision should be made to protect such of the State and County officials as might be called from their civil duties to serve their country in its hour of need from the effect of their necessary violation of these constitutional and statutory provisions, which otherwise would subject them to removal; that this was the primary purpose and fundamental objective in the passage of Chapter 4 of the Acts of 1943, and in this view we are not of opinion that a beneficiary of this saving legislation may challenge the power of the Legislature which created his office to include incidentally the manifestly just and equitable provision that the salary of the office shall be paid to the legally chosen substitute who temporarily performs the duties of the office.

 Citation of authority is unnecessary to sustain the holding, first, that one may not attack the constitutionality of a law which was enacted primarily for his benefit, and which, as we have shown, so operates on the whole, and when, second, it appears that he is violating the law under which he claims in a vital particular, and subjecting himself to removal, but for the protective provisions of the law he assails.

 It may be said that the acceptance of place in the military service was not voluntary, that it is in response to the demand of his country in a war emergency. But the application of the principle involved is not so determined. The reason for the rule is based on the necessity for the discharge of official duties by those to whom they have been entrusted, in order that orderly government may be uninterruptedly maintained. The reasons for abandonment, or failure to perform, are not controlling factors. It was in recognition of this involuntary element and the patriotic nature of the incompatible service complainant is rendering, that the Legislature has made this just and generous exceptional provision for the preservation to him of his office. Of this he cannot be heard to complain.

In view of this conclusion, it becomes unnecessary to consider other questions ably argued on the briefs. The decree is reversed and the bill dismissed.

ON PETITION TO REHEAR.

A petition to rehear complains (1) that the bill was dismissed upon grounds not assigned by the defendants, and not considered on the hearing, and (2) that our holding is contrary to pronouncements of Courts of other jurisdictions, cited by petitioner.

■■ Responding to the first proposition, the question of the right of complainant below to the relief sought was raised on the argument of the case by the suggestion from the bench that complainant was a beneficiary of the Act. Furthermore, the brief of appellants called attention to and relied on the provision in Section ten of the Act creating complainant's office, and under which he claims title thereto, which expressly requires that he shall give all his "working time to the duties of their office," which his bill concedes he is not doing. And, too, while it is true that the rules of this Court provide that all questions presented to this Court shall have been raised in the trial Court and relied on in the assignments of error, this limitation is not binding upon this Court, acting on its own motion, when the constitutionality of statutes are involved, or when this Court conceives that equitable considerations, apparent on the face of the record, forbid a complainant from maintaining a suit. In every such case the Court will assert, on its own motion, its obligation to deny the use of the Court. These principles are fundamental. Appellate Courts have broad discretionary powers in such matters of practice. For the general rule and cases, including Tennessee, see 4 C. J. S., Appeal and Error, secs. 1220, 1238, pp. 1721 and 1734.

We have given careful consideration to the authorities relied on by petitioner to sustain the insistence that by acceptance of an official place of trust and profit in the Military Service, a Judge of a State Court does not vacate his office, or subject himself to removal therefrom; that the two offices are not incompatible, within the meaning of our Constitution.

We discussed in our opinion whether or not one shown only to have accepted a place or position in the Military

Service of the United States, without a showing that he was in fact technically an "officer," was an "officer" within our constitutional provisions. We concluded that, even if a private, he was within the prohibition. We assumed, without deeming it necessary to cite authority, that a commissioned officer in the United States Military Service would assuredly be holding an "office of trust and profit under . . . the United States" and that such a holding would be within the prohibition and incompatible. Petitioner challenges the correctness of this assumption and says that we cite no authority. We do so now.

The annotation in 26 A. L. R., 142 reviews the decisions on this question. In *Chisholm* v. *Coleman,* 43 Ala., 204, 94 Am. Dec., 677, a circuit judge was held to have forfeited and vacated his office when he accepted a commission in the Confederate Army. In *Lowe* v. *State,* 83 Tex. Cr. R., 134, 201 S. W., 986, a state judge, who was an officer of the National Guard, was held to have vacated his judgeship when he was placed on the Federal payroll as an officer in the Military Service. (Although this same Court holds that a judge does not vacate his office by acceptance of a commission as Captain in the National Guard, *so long as he is not in active service. Ex parte Dailey,* 93 Tex. Cr. R., 68, 246 S. W., 91, 26 A. L. R., 138.) In *State ex rel.* v. *Sadler,* 25 Nev., 131, 132, 58 P., 284, 59 P., 546, 63 P., 128, 83 Am. St. Rep., 573, this rule was applied to a State Senator who became a paymaster, with rank of Major, in the United States Army. To the same effect was the holding in *Kerr* v. *Jones,* 19 Ind., 351, where the Court held that a State Supreme Court Reporter, who became a Colonel of Volunteers in the United States Army, vacated his State office. And see *Oliver* v. *Jersey*

*City,* 63 N. J. L., 96, 42 A., 782, where a Street and Water Commissioner became a Colonel in the United States Army; and *People ex rel.* v. *Drake,* 43 App. Div., 325, 60 N. Y. S., 309 (affirmed without opinion in 161 N. Y., 642, 57 N. E., 1122). (The last two cases involved municipal officers, the principle being the same.) To like effect is the holding of the Illinois Supreme Court, in *Fekete* v. *City of East St. Louis,* 315 Ill., 58, 145 N. E., 692, reported in 40 A. L. R., 650. Also, see *Commonwealth* v. *Smith,* 343 Pa., 446, 23 A. (2d), 440, and *Perkins* v. *Manning* (Ariz.), 122 P. (2d), 857.

Petitioner cites and relies chiefly on *State ex rel.* v. *Grayston,* 349 Mo., 700, 163 S. W. (2d), 335, 338. That opinion contains certain broad statements, quoted by diligent counsel for petitioner, which would seem to support petitioner's contention, but when the facts of the case, and the reasoning of the Court on the whole, and the manner of the presentation of the question are considered, we do not find this case to be applicable. The Court emphasizes that State Judge WATSON, whose status was involved, was not, like petitioner here, seeking to collect his salary as Judge, while drawing compensation as an officer in the Military Service. There was no such claim being asserted. That case arose in this manner: In the absence of Judge Watson, on Military Service, the authority of a substitute, or special judge, elected by the bar, was challenged by a defendant in an action pending in Judge WATSON's Court, on the theory that Judge WATSON had *vacated* the office, and that the provision for supplying a temporary Judge in the absence of the regular Judge did not apply. The Court held, first, that Watson was in Military Service temporarily as a member of the *State Militia,* of which he had been a member when

called into service. The opinion reviewed at length the history of the State Militia "as distinguished from the professional soldier who makes up the Regular Army," and construed the constitutional provision, similar to ours, as having "no application to a militiaman even though he is employed in the service of the United States during times of emergency." No such situation is presented in the instant case—even though we should approve this reasoning and construction, which appears to us to be strained to meet a hard condition—when to have held the sitting Judge not even a *de facto* Judge would have invalidated numerous other decisions under like conditions. The Court noted the lack of legislation to care for the situation by providing for the filling of the vacancy in such cases, such as we have by the Act of 1943.

The Missouri Court cites as in accord, in principle, with its holding, *Kennedy* v. *Cook,* 285 Ky., 9, 146 S. W. (2d), 56, 132 A. L. R., 251, *McCoy* v. *Board of Supervisors,* 18 Cal. (2d), 193, 114 P. (2d), 569; *State* v. *Joseph,* 143 La., 428, 78 So., 663, L. R. A., 1918E, 1062, and the Virginia case of *City of Lynchburg* v. *Suttenfield,* 177 Va., 212, 13 S. E. (2d), 323, holding that "a member of the Virginia National Guard retains his status as such when in the Federal service and is entitled under the Virginia code to retain his office as councilman." [349 Mo., 700, 163 S. W. (2d), 339.] Tennessee has no such Code provision (unless it be Chap. 4, Acts of 1943) and petitioner is not a member of the State National Guard.

In the Kentucky case, the Circuit Court Clerk involved was only in training in the *National Guard* of that State for a limited period. In the California case, McCoy had a leave of absence *without pay,* and California had a statute similar in effect to ours providing for such tempo-

rary absence and preserving to him his office. Nor is the Louisiana case in point. Here a clerk of a State Court and *ex officio* Jury Commissioner was held not to have forfeited his office as Commissioner by acceptance of appointment as a member of a local draft board. It does not appear that either position carried compensation. The Court held that this involved merely the performance of an additional duty, not interfering with performance of his duties as Jury Commissioner.

We are cited to no case in which, as contended for by petitioner, one holding a state salaried office has been held entitled to continue to collect the salary attached thereto after having wholly ceased to perform the services of the office and accepted an office in the United States Military Service from which he is receiving compensation.

Finally, whether or not the office of petitioner would have been vacated by his acceptance of the office he now holds with the United States, but for the saving terms of Chapter 4, Acts of 1943, he certainly cannot recover the compensation attached to the office of Judge in the face of the express provision of the statute on which his title rests that he shall give all of his working time to the duties of the office, when it appears that he is giving none of his time thereto.

The petition is dismissed.